*Formatted for Electronic Distribution*                                                           *Not For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

**In re:**
      **ARTHUR J. ROBERT, JR.,**                                          **Chapter 7 Case**
                **Debtor.**                                                              **# 05-12461**
_____

**RAYMOND J. OBUCHOWSKI, in his capacity**
**as Chapter 7 Trustee for the estate of**
**ARTHUR J. ROBERT JR.**
      **Plaintiff,**
      **v.**                                                      **Adversary Proceeding**
**MICHAEL P. ENTIS,**                                      **# 06-1041**
      **Defendant.**
_____

*Appearances:*        Jennifer Emens-Butler, Esq.              Michael P. Entis
                               Obuchowski & Emens-Butler             Pro Se
                               Bethel, Vt.                                   Stowe, Vt.
                               *For the Plaintiff*                              *For the Defendant*

## MEMORANDUM OF DECISION
### GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

       Raymond Obuchowski, in his capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the estate of Arthur J. Robert Jr. ("Robert" or the "Debtor"), initiated an adversary proceeding against Michael P. Entis ("Entis" or the "Defendant") asserting two claims. The Plaintiff seeks, first, a declaration that a $50,000 payment the Defendant received in return for releasing a writ of attachment on the Debtor's real property was a preferential transfer avoidable under 11 U.S.C. § 547(b),[1] and, second, a determination that the writ of attachment did not create a valid lien. The parties filed cross-motions for summary judgment. For the reasons stated below, the Court declares that the $50,000 payment constitutes a preference that may be avoided by the Plaintiff, and that the Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court grants the Plaintiff's cross-motion for summary judgment and denies the Defendant's motion for summary judgment.

## JURISDICTION

       The Court has jurisdiction over this adversary proceeding and the pending motions for summary judgment under 28 U.S.C. § 157(b)(2)(F) and (K).

---

[1] All statutory references herein are to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated. Since the Debtor filed a chapter 13 petition on October 16, 2005, prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the references are to the Bankruptcy Code pre- BAPCPA.

## BACKGROUND FACTS[2]

The following material facts are not disputed and are taken from both the Defendant's and the Trustee's Statements of Material Facts and other documents in the record (doc. ## 4, 8, 23).

A.   The State Court Action

In May 2004, Entis entered into a contract with the Debtor's company, Artworks Building Solutions, LLC ("Artworks"), to construct Entis's residence in Stowe, Vermont (doc. # 4, ¶ 1). Between June and September 2004, Entis paid $217,687 to Artworks and the Debtor as profit payments or as payments for labor, materials, and subcontractors (doc. # 4, ¶¶ 4-6). After the Debtor abandoned work on the residence in October 2004 (doc. # 4, ¶ 7), Entis requested that $121,068.96 in overpayments for incomplete and unperformed work be returned to him (doc. # 4, ¶¶ 8, 9). Receiving no satisfaction, Entis commenced a lawsuit in December 2004 in Lamoille Superior Court against the Debtor and Artworks for consumer fraud, fraudulent misrepresentation, and breach of contract, and an action for piercing the corporate veil (doc. # 4, ¶ 10; doc. # 8, ¶ 10).

The Superior Court issued a Decision and Order in May 2005 granting Entis a prejudgment writ of attachment in the amount of $253,571.43 against "the non-exempt property of Defendants Robert and Artworks." (doc. # 4, ¶ 14 & Ex. 8 at 2; doc. # 8 ¶ 12). That court's Chief Deputy executed the writ which attached to "certain personal property of Artworks and certain real property of the Debtor, including 234 Swamp Road, Hinesburg, Vermont and 3725 Hinesburg Road, Richmond, Vermont"[3] (together, the "Property") (doc. # 8, ¶ 13). The writ was recorded in June 2005. Id. at ¶ 14.

In August 2005, the Debtor executed a purchase and sale contract for the Property with Caneel, LLC (doc. # 4, ¶ 15 & Ex. 9; doc. # 8, ¶ 18). Later that month, the Debtor and Entis reached an agreement whereby Entis would dismiss his still-active state court lawsuit and release his writ of attachment on the Property in exchange for a $50,000 payment on the date of closing (doc. # 4, ¶16). On September 29,

---

[2] In his motion for summary judgment, the Defendant provides a three-and-one-half page "Recital of Material Facts" (doc. # 4). Many of these facts relate to the construction contract between Entis and the Debtor and to the subsequent state court action initiated by Entis. In his opposition papers and cross-motion for summary judgment, the Trustee responds that he is "without sufficient information to verify or dispute the material facts" provided by the Defendant but, even taking those facts in the light most favorable to the Defendant, argues that summary judgment must be granted in his favor (doc. # 8). He adds that while disputes surround certain facts (such as the first date a demand was placed upon Entis), "they are immaterial to the cross-motions for summary judgment." Id. He also notes that while the Defendant had raised an inference in his papers that the Debtor and his wife were not married at the time the writ of attachment was recorded, Entis never raised that point in his statement of material facts. In any case, the Debtor provided an affidavit attesting to his marriage. the Defendant, in turn, responded that he was without sufficient information to verify or dispute the Trustee's statement of material facts but, even taking them in the light most favorable to the Trustee, summary judgment must be granted in his favor (doc. # 10).

[3] Although the Richmond and Hinesburg properties are located in different towns, they adjoin each other. The record shows that both the Richmond and Hinesburg properties were "part of the property conveyed to the Debtor and Hannah Robert (a/k/a Hanna[h] Butler), husband and wife, by the warranty deed of Reed dated June 10, 1999." (doc. # 8, ¶¶ 15, 16). See also doc. 4, Ex. 10 and 11 (indicating on the Purchase & Sale Contract that both Arthur and Hannah Robert signed the Purchase & Sale Offer for Swamp Road and additional two lots in Richmond; and indicating on the Mortgage Deed to Caneel LLC that the Swamp Road property was conveyed by the 1999 Reed Warranty Deed).

2005, Entis received the $50,000 from the sale of the Property (doc. # 4, ¶¶18-19 and doc. # 8, ¶ 19).

B. <u>The Debtor's Marital Status and the Purchase of his Residential Property</u>

In an August 2006 Affidavit, the Debtor, Arthur J. Robert, Jr., and Hannah Butler Robert averred that they were married on May 19, 1988 and have "remained married continuously from that date to the date herein" (doc. # 23).

With regard to certain real property the Debtor and his spouse owned as tenants-by-the-entirety, the Plaintiff writes in his Statement of Material Facts:

> On or about June 10, 1999 Richard A. Reed and Betsy Reed conveyed certain real property by warranty deed to Arthur J. Robert and Hannah Robert as husband and wife, which properties were located in both the Town of Hinesburg and the Town of Richmond, Vermont. (Such warranty deed was filed for record on July 1, 1999 in Book 111, Page 476-479 of the Town of Richmond Land Records and filed for Record June 14, 1999 in Book 118, Page 434 of the Town of Hinesburg Land Records.)

(doc. # 8 ¶ 9). The record indicates that the Debtor owned the Property as a tenant by the entirety on both the date the writ of attachment was issued and the date the sale occurred. <u>See</u> <u>infra</u>, fn. 6.

## PROCEDURAL HISTORY

On October 16, 2005, less than a month after Entis received the $50,000 check, the Debtor filed a petition for relief under Chapter 13 (doc. # 1 in # 05-12461). He converted his case to Chapter 7 in March 2006 (doc. # 48) and Raymond J. Obuchowski was appointed to serve as the case trustee (doc. # 8, ¶ 3).

In June 2006, the Trustee filed the instant adversary proceeding asking the Court to determine (1) that the $50,000 payment constituted a preferential transfer, and (2) the extent and validity of the lien[4] (doc. # 1, # 06-1041). The Defendant, appearing *pro se*, filed a motion for summary judgment (doc. # 4). The Trustee opposed and filed a cross-motion for summary judgment (doc. # 8); the parties filed supplemental papers (docs. ## 15, 19); and the Court held a status hearing on December 19, 2006 at which time the parties asserted they would like to submit further briefing. The Court assented and briefing was completed by May 2007 (doc. ## 26, 28, 29).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

---

[4] In later filings, the Trustee stated that the issue of the validity of the writ/lien is a complex question that need not be addressed in order to resolve the cross-motions: "Determining whether the lien was valid, void, voidable, attached or inchoate at the time of the sale of the entireties property does not directly answer the pertinent question in the instant action" (doc. # 26, p. 2). The Court agrees but nevertheless addresses the validity of the lien in the context of the entireties defense raised by the Defendant.

3

248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). In this case, there is no dispute as to any material fact. Accordingly, this case is ripe for disposition on summary judgment.

## DISCUSSION

Although the Defendant raises numerous arguments in his papers, the dispositive issue in this case is whether the $50,000 payment he received from the Debtor constituted a preference that may be avoided by the Plaintiff. The pertinent section of the Bankruptcy Code governing preferential transfers provides that:

the trustee may avoid any transfer of an interest of the debtor in property –

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
 (A) on or within 90 days before the date of the filing of the petition;
 . . . and
(5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

§ 547(b)(1)-(5). "The determination as to whether a transfer is an avoidable preference is a two step process. First, the Trustee . . . has the burden of proving the five elements of a preference. Once a prima facie case of preference is established, the defendant, pursuant to 11 U.S.C. § 547(g), has the burden of proving that the transfer is excepted from the preference rule." In re Fonda Group, Inc., 108 B.R. 956, 958 (D.N.J. 1989). The trustee bears the burden of proving each element of § 547(b) by a preponderance of the evidence. See In re 360Networks Inc., 327 B.R. 187, 190 (Bankr. S.D.N.Y. 2005). Once a court holds that a transfer may be avoided under § 547, the Code provides that the trustee may then "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from – (1) the initial transferee of such transfer. . ." § 550(a)(1).

4

## I. Was the Payment a Preferential Transfer?

The parties do not contest that the $50,000 payment was for the benefit of the Creditor / Defendant or that it occurred within 90 days before the Debtor filed his petition. Although neither party has stated whether the $50,000 payment was made while the Debtor was insolvent, "[f]or purposes of the third element [of § 547(b)] the debtor is presumed insolvent during the ninety days preceding the filing of the petition." Lawson v. Ford Motor Co. (In re Roblin Industries, Inc.), 78 F.3d 30, 34 (2d Cir. 1996). Because the Defendant did not rebut this presumption, the Plaintiff is deemed to have satisfied this element of § 547(b). Having satisfied three elements of § 547(b), the Trustee must meet his burden on the two remaining elements: whether the payment was made on account of an antecedent debt and whether the Defendant received more from this payment than he would have received in a chapter 7 case. See § 547(b)(2) and (5).

The Defendant contends that the payment was not made on account of an antecedent debt because the bankruptcy proceedings stayed his state court litigation against the Debtor and therefore the "Debtor was under no legal obligation to pay Defendant at the time Defendant received [the] Payment" (citing In re Fonda Group, Inc., 108 B.R. 956 (Bankr. D.N.J. 1989)) (doc. # 10 ¶ 11). A bankruptcy stay applies only to any "judicial, administrative, or other proceeding against the debtor that was or could have been commenced before" the debtor's filing. § 362(a)(1). At the point the Robert filed for bankruptcy, however, the state court proceeding involving Entis and the Debtor had been dismissed, pursuant to their agreement (doc. # 4, ¶ 16): there was no action to be stayed. In any event, the existence of a stay is irrelevant to the determination of whether the $50,000 payment satisfied an antecedent debt.[5] There is no doubt that the Debtor paid Entis only because of, and solely on account of, the antecedent debt which arose in connection with the construction contract between the parties and the Debtor's performance (or lack thereof) under that contract. Thus, the antecedent debt element of § 547(b)(2) is satisfied.

Having met his burden on the first four elements of § 547(b), the Court turns to whether the Plaintiff has satisfied § 547(b)(5). "Under § 547(b)(5), a transfer to a fully secured creditor is immunized from preference attack because the creditor would have been paid in full in a hypothetical Chapter 7 liquidation by virtue of its realization on its collateral. See 5 Lawrence P. King et. al., Collier on Bankruptcy, ¶ 547.03[7] [15th ed. 2002]; In re Pitman, 843 F.2d 235, 241 (6th Cir. 1988)." 360Networks, Inc., 327 B.R. at 190. "In contrast, any payment to a general unsecured creditor within the 90-day period

---

[5] An antecedent debt "is defined as a debt which is incurred prior to the relevant transfer." Durant's Rental Center, Inc. v. United Truck Leasing, Inc. (In re Durant's Rental Center, Inc.), 116 B.R. 362, 366 (Bankr. D.Conn. 1990). A debt, in turn, is defined in the Code as "liability on a claim." § 101(12). Black's Law Dictionary (8th ed. 2004) defines liability as "the quality or state of being legally obligated or accountable." Entis had filed suit against the Debtor, and had obtained a $253,571.43 writ of attachment on the Debtor's non-exempt properties, based upon the contract between the Debtor and Entis. The writ, as a legal impediment to sale of the Debtor's Property, constituted a legal liability or obligation, and thus the Debtor's $50,000 payment to release the writ constituted payment on an antecedent debt. Moreover, Entis states that in exchange for releasing the writ, the "Debtor would cause to be **REPAID** to Movant $50,000" (doc. # 4 ¶ 16) (emphasis in original).

5

preceding the filing of the petition would be preferential if other creditors in the same class would not receive the same payment in a chapter 7 liquidation, i.e., the chapter 7 distribution plus the payment received." Collier, ¶ 547.03[7] (15th ed. rev. 2007). Accordingly, the resolution of the preference question in this case depends on whether Entis was a secured or an unsecured creditor at the time Robert filed his petition.

Interpreting his briefs "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), concerning § 547(b)(5), the Defendant appears to argue that his writ was valid and effective, that he had a secured interest in the Property, and therefore the $50,000 he received was immune from preference attack.[6] The Plaintiff responds that "the Defendant was not 'secured' at the time of the transfer because his inchoate lien was not executable, whether or not it was a 'valid' lien" (doc. # 26, p. 3).

Entis's state court action did not proceed to judgment because the parties had arrived at an agreement whereby Entis released the writ of attachment and discontinued the action, permitting Robert and his wife to sell the Property, in exchange for a payment to him in the amount of $50,000 (doc. # 4 ¶¶ 16-19). In Vermont, the filing of a writ of attachment is a preliminary step (often taken by a contractor) on the road to judgment against another party (often a homeowner) for work provided for which the contractor was not paid. See 9 V.S.A. §§ 1921-1928; In re Ahokas, 361 B.R. 54, 61 (Bankr. D.Vt. 2007) ("[T]he writ is a preliminary . . . figure that attaches to the subject real property until the actual judgment based on the litigation is filed."); Glinka v. Hinesburg Sand & Gravel, Inc. (In re APC Constr.), 132 B.R. 690, 694 (D.Vt. 1991) ("The obtaining of a writ of attachment to perfect a statutory lien, although judicial in nature, is just another statutory step from inchoateness to perfection.") (citation omitted).

The writ, as a lien on Roberts's non-exempt property, allowed Entis to claim

> priority in the asset over other parties asserting claims on it. . . Once. . . the lien is created, the basic purpose of prejudgment attachment becomes apparent: to aid in collection when the money judgment is obtained. The property subject to the lien serves as security for the judgment, thus giving the creditor priority over subsequent claimants. This lien is provisional, inchoate, and contingent until such time as judgment is obtained, thereby making the lien final.

Hon. William H. Brown, 1 The Law of Debtors and Creditors § 6:24.

As long as Entis was pursuing a judgment, his lien insured that he would have priority over other creditors once he obtained that judgment. But he did not complete the lawsuit and did not obtain a

---

[6] While Entis claims that the writ of attachment was a valid lien against the Debtor's Hinesburg/Richmond properties (doc. # 28, p. 9), he also asserts that the Hinesburg writ "may have applied to property owned by Debtor and his alleged spouse as 'tenancy by the entirety' (Hinesburg side)" but that his Richmond writ "most certainly applied to Debtor's property (the Richmond side) which did not qualify for 'tenancy by the entirety' protection." Id. He provides no evidentiary support for his conclusory statement that the Richmond property was not entireties property, and it is noteworthy that this statement is contradicted by the Trustee's statement of material facts to which Entis did not object.

6

judgment based on that writ; instead, he released the writ and discharged the state court action prior to the Debtor filing bankruptcy. Entis released the writ on the property as a result of the settlement he had reached with Robert, upon receipt of the $50,000. See 12 V.S.A. § 3293(a)(1) ("When an attachment . . . of real estate is made in an action at law, such real estate shall be discharged from such attachment lien . . .(1) When the action is discontinued. . ."). Accordingly, at the time Robert filed his petition, Entis had no interest of any kind in Robert's property, secured or unsecured. He did not hold a mortgage on the property[7] nor any instrument of similar legal effect that would secure his claim against the Debtor. See In re Schwinn Bicycle Co., 200 B.R. 980, 991 (Bankr. N.D.Ill. 1996) (holding that, for purposes of § 547(b)(5) analysis, "the court must look at the actual status of the creditor on the date of filing."). The Plaintiff correctly asserts that the Defendant, as a creditor holding a lien that had not been reduced to judgment, "could not have forced the sale of the entireties property and could not have stepped in as a secured party upon the entireties property to receive payment. . . . Until the consensual sale, the Defendant was in no greater position than any other unsecured creditor of the Debtor and would have received only an equal share in any Chapter 7 estate at that time" (doc. # 26 p. 3). Entis's writ of attachment constituted a cloud on the title of the Property Robert wished to sell, and that allowed him to negotiate a payment from the Debtor in exchange for a release of the writ. The Debtor paid money to Entis so he could convey clear title to the Property. That cloud on the title is not tantamount to a lien, and the Defendant's ability to interfere with the conveyance of clear title did not transform the writ of attachment from an inchoate lien into a choate lien – or transform Entis's unsecured claim into a secured one. The Defendant was an unsecured creditor of the Debtor both before and after the sale; the only difference was that after the sale Entis no longer had any claim of priority against other creditors seeking to enforce their rights against the Property.

When he was paid $50,000, the Defendant received more than he otherwise would have been paid pursuant to the distribution rules of chapter 7 of the Bankruptcy Code. In other words, if the transfer had not been made and the Debtor's non-exempt assets were liquidated in a hypothetical chapter 7 case, Entis would have received less than $50,000. Consequently, the Plaintiff has established the fifth element of § 547(b), has made his prima facie case for avoidance of the transfer, and the payment to the Defendant is subject to avoidance as a preference.

## II.    Defenses

"Even when the trustee satisfies all of the elements of section 547(b) in attacking a transfer, the transfer may not be avoided if the defendant transferee can prove that it is entitled to rely on one of the exceptions listed in section 547(c)." Collier, § 547[04]. The Defendant has offered a number of reasons

---

[7] Nor did Entis have a statutory lien (which he arguably would have had if he had pursued his state court action to judgment). Bankruptcy courts have held that statutory liens are exempt from avoidance under preference law. See § 547(c)(6); The Cadle Co. v. Mangan, 316 B.R. 11, 22 (D.Conn. 2004); 360Networks, 327 B.R. at 191.

why the transfer should be excepted from the preference rule, some relating to the § 547(c) exceptions, and some that are outside the purview of the statute. None of them defeat the Plaintiff's right to avoid this transfer and recoup the $50,000 from the Defendant.

      A.      **Is Entireties Property Exempt?**

The Defendant argues that (i) the Property the Debtor sold was held in tenancy by the entirety; (ii) entireties property is not property of the bankruptcy estate; (iii) proceeds from the sale of exempt entireties property is similarly not property of the estate; and (iv) therefore because he was paid with exempt funds, that payment did not diminish the property of the estate and cannot be avoided as a preference (doc. # 15). In support of his position, he cites Evans v. Wolinsky, 347 B.R. 9 (D.Vt. 2006), a fraudulent conveyance case where the district court held that the transfer of entireties property to one's spouse is not a fraudulent conveyance if made at a time when there was no joint creditor, since the debtor could not be said to be avoiding creditors by conveying property that was exempt from attachment in the first instance.

The Plaintiff responds (doc. ## 19, 26) that Evans must be distinguished from preference cases on several grounds. First, the Plaintiff points to a case that held that a debtor's pre-petition transfer of exempt property could be avoided as a preference despite the homestead nature of the property, that the creditor who raised the issue of exemption did not have standing to raise the debtor's exemption as a defense, and that the debtor waived her exemption by choosing to pay the creditor with the otherwise exempt funds, see Fox v. Smoker (In re Noblitt), 72 F.3d 757 (9th Cir. 1995). Second, the Plaintiff asserts that in an entireties case, the same rules enunciated in Noblitt apply: where a debtor and his non-debtor spouse, pre-petition, transferred their home owned as tenancy by the entirety to satisfy an antecedent debt, the transfer could be avoided and the creditor could not raise the debtor's exemption as a defense, see In re Wickstrom, 113 B.R. 339, 341 (Bankr. W.D.Mich. 1990). Third, the Plaintiff cites case law holding that where the debtor and his non-debtor spouse took the proceeds from their property, which they had owned as tenants by the entirety, to pay a judgment lien, the entireties property was severed when they chose to pay the creditor, and the creditor could not rely upon the exempt character of the property to defeat a preference action, see In re Templeton, 1 B.R. 245, 248-49 (Bankr. E.D.Tenn. 1979) (interpreting the law under the Bankruptcy Act and addressing the lien as attaching to the debtor's survivorship interest rather than being a provisional, inchoate, and contingent interest).

In effect, the Defendant raises a "diminution of the estate" argument and focuses on the issue of whether the transfer has diminished or depleted the debtor's estate: if the answer is yes, the trustee could avoid the transfer; if the answer is no, the trustee could not. But in order to make their entireties arguments, both parties assume that the Defendant's lien – which only applied to the property of Robert individually and Artworks -- did not validly attach because it was entireties property. See In re Hutchins,

8

306 B.R. 82, 89 (Bankr. D.Vt. 2004) (Vermont courts have long held that "a creditor of only one spouse may not attach a lien to a tenancy by the entirety; a lien may only attach if it is a joint debt.")[8] In Vermont, "tenants by the entirety are viewed as being individually vested, under a legal fiction, with title to the whole estate . . . Neither spouse has a share which can be disposed of or encumbered without the joinder of the other spouse." Bellows Falls Trust Co. v. Gibbs, 148 Vt. 633, 633, 534 A.2d 210, 211 (1987) (citations omitted). The record shows that the Property was owned by Robert and his wife as tenants by the entireties. Once entireties property is sold, the proceeds are also owned by the entirety, see George v. Dutton's Estate, 94 Vt. 76, 108 A. 515, 515 (1920).

There are a number of flaws in the Defendant's argument that because the funds from the sale of the entireties property were exempt, the payment to him with those funds did not diminish the estate. First, the status of those funds as exempt is questionable at best. Robert paid Entis prior to filing bankruptcy and, as a result, the funds were not exempt because there was no bankruptcy estate to exempt them from. See Goldberg v. Torell (In re Rundlett), 149 B.R. 353, 358 (Bankr. S.D.N.Y. 1993) ("The argument that a debtor's prepetition payment to a creditor of exemptible property does not diminish the estate puts the cart before the horse. Under the Bankruptcy Code, exemptible property is property of the estate within the meaning of 11 U.S.C. § 541 until the debtor asserts successfully the right to the exemption.); In re Owen, 104 B.R. 929, 932 (C.D.Ill. 1989) (citing numerous authorities holding that the bankruptcy trustee had the power to avoid transfers of the proceeds of exempt property, given that it was "'well-settled that exempt property is property of the estate until the debtor asserts his right to the exemption. Therefore, a transfer of otherwise exempt property, which has been avoided under . . . § 547 . . . is brought into the bankruptcy estate by § 551.'") (quoting Matter of Weis, 92 B.R. 816, 820-21 (Bankr. W.D. Wis. 1988)).

Moreover, at the point that Robert submitted his Statement of Financial Affairs, he indicated that he received $34,669.72 as his share of the sale of the residence, but his Schedule B did not list the proceeds as a specific asset, and his Schedule C did not claim those funds as exempt. This leads the Court to conclude that the Debtor no longer had the proceeds on the date of his bankruptcy filing.

Even assuming, for the purpose of argument, that the funds paid to Entis were exemptible, if not exempt, Entis still could not escape a finding that the payment was a preference. Case law has consistently held that "[w]hen a debtor chooses to transfer exemptible property to a creditor, the debtor is deemed to have chosen not to claim that property as exempt." In re Sanders, 213 B.R. 324, 329 (Bankr.

---

[8] Therefore, if a creditor attached entireties property where only one of the spouses owed the debt, an argument could be made that it was a valid lien but only to the extent that it was contingent upon the occurrence of divorce or death of one of the spouses, which would destroy the entireties interest. Only such occurrences would provide an opportunity for the creditor to encumber the property. If neither of those events occurred, a creditor with a writ of attachment on entireties property where one spouse was the debtor would hold only an inchoate lien upon which he could not execute.

9

M.D. Tenn. 1997) (citing In re Richards, 92 B.R. 369, 372 (Bankr. N.D.Ind. 1988)). In other words, the debtor has waived his exemption. See Noblit, 72 F.3d at 758; Wickstrom, 113 B.R. at 351, Richards, 92 B.R. at 372, Matter of Kewin, 24 B.R. 158, 161 (Bankr. E.D.Mich. 1982). Here, the Debtor and his wife voluntarily severed the entireties ownership of the proceeds and the Debtor waived his possible exemption when he paid the Defendant $50,000, "preferring" him over other unsecured creditors.

Additionally, while proceeds of exempt property are exempt in the debtor's hands, once those proceeds leave the hands of the debtor and enter the hands of a creditor, they lose their exempt status and can be recovered through a preference proceeding. This is because "the opportunity to claim exemptions is personal to the debtor and is not available to a creditor as a defense to a preference." Noblit, 72 F.3d at 758; Rundlett, 149 B.R. at 358 (citing Wickstrom, 113 B.R. at 349); Richards, 92 B.R. at 372.

Accordingly, the Court concludes that the Defendant's entireties exemption arguments fail to insulate the $50,000 payment from the Plaintiff's reach

**B.    New Value**

The Defendant contends that the consideration he gave to the Debtor, in the form of a release of the writ, represented "new value" as that term has been construed under § 547, which made the $50,000 payment immune from avoidance under § 547(c)(1) and/or (c)(4) (doc. # 4, ¶ 26, doc. 28, p. 7-8).

Section 547(c)(1) provides that

> the trustee cannot avoid [as a preference] a transfer . . .
>
> (A)    intended by the debtor and the creditor to be a contemporaneous exchange for new value given to the debtor; and
>
> (B)    in fact a substantially contemporaneous exchange.

§ 547(c)(1)(A), (B). Section 547(c)(4) provides that the trustee may not avoid [as a preference] a transfer

> to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor
>
> (A)    not secured by an otherwise unavoidable security interest; and
>
> (B)    on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

§ 547(c)(4)(A), (B). The Code defines new value as

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

§ 547(a)(2).

New value given by the creditor "must be to the debtor and must replenish the estate for the value removed by the transfers. See Jones v. Society Bank & Trust (In re Riggs), 129 B.R. 494, 497 (Bankr. S.D. Ohio 1991). "A vast majority of courts agree that 'new value' for purposes of § 547 must be

10

something of tangible economic value." Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.), 177 B.R. 120, 137 (Bankr.D.Mass. 1994) (citations omitted).

In a case with facts similar to this one, a contractor filed a lien on a debtor's property in order to satisfy an outstanding amount due. The debtor paid the creditor and, once that payment was received, the creditor released the lien on the property. Sixty days later, the debtor filed a bankruptcy petition, and the trustee claimed the payment to the creditor was a preferential transfer. The court held:

> There is no question that the Debtor did not receive anything of value in exchange for the payment to [the creditor]. While it might be argued that [the creditor's] release of its lien on the owner's property might have indirectly conferred some benefit on the Debtor, the value of this indirect compensation is highly speculative and certainly falls far short of the type of consideration which would qualify as "new value." Be that as it may, no measurable value was added to the assets of the Debtor.

In re Empire Pipe and Development, Inc., 152 B.R. 339, 341 (Bankr.M.D.Fla. 1993). See also In re Southmark Corp., 239 F.3d 365 at *3 (5th Cir. 2000) (Table) (holding that settlement agreements, where a party terminated litigation in exchange for litigation expenses incurred, was not new value, as it did not rise to the level of "good, services, or new credit" as required by the exclusive definition of new value."); 360Networks, 327 B.R. at 192 (citing cases holding that release of a right to perfect a statutory lien did not constitute new value); Peltz v. New Age Consulting Servs. Inc., 279 B.R. 99, (Bankr.D.Del. 2002) (release given in settlement of state court litigation did not provide any new value for purposes of an exception to preference recovery); In re Durant's Rental Center, Inc., 116 B.R. 362, 365 (Bankr. D.Conn. 1990) (the release of future lease obligations does not constitute new value).

The burden of proving the affirmative defense of non-avoidability of a preferential transfer under both subsection (c)(1) and (c)(4) falls on the creditor. See Durant's Rental Center, Inc. v. United Truck Leasing, Inc. (In re Durant's Rental Center, Inc.), 116 B.R. 362, 365 (Bankr. D.Conn. 1990); In re Ford, 98 B.R. 669, 680 (Bankr. D.Vt. 1989). The Defendant has failed to substantiate the § 547(c)(1) defense. Moreover, the § 547(c)(4) defense applies only when the creditor and debtor have more than one exchange during the 90-day preference period, which is not the case here. See Ford, 98 B.R. at 679.

### C.    The Trust Arguments

The Defendant contends that the funds he paid to the Debtor as a deposit were held in trust by the Debtor and were not property of the Debtor's estate. He therefore posits that the $50,000 payment he ultimately recovered from the Debtor was from a trust fund and beyond the reach of a preferential transfer action. The Court is not persuaded by any of the Defendant's trust fund arguments – whether based on common law or statutory trusts.

The Defendant argues that the funds he paid to the Debtor "constituted a constructive trust from which payments to materialmen should have been paid by Debtor." He insists those funds did not belong

11

to the Debtor or to the estate, and therefore the $50,000 payment to him from those funds could not be avoided by the Plaintiff (doc. # 4 ¶ 25, doc. # 10, ¶ 8, doc. # 28, pp. 2-4). A constructive trust "is a tool often used by courts to prevent unjust enrichment. Such trusts will arise whenever title is acquired through a confidence which has been abused, but the forms and varieties of such trusts will differ depending on the circumstances." Legault v. Legault, 142 Vt. 525, 529, 459 A.2d 980, 983 (Vt. 1983) (internal quotation marks and citations omitted). "A trust is declared in order that the court may lay its hands upon the property and wrest it from the wrongdoer in favor of the party for whom, or on whose account, it was received." Id. at 530 (internal quotation marks and citations omitted). "State law controls whether property in possession of a debtor on his or her petition date is held in constructive trust." In re Forant, 331 B.R. 151, 155 (Bankr. D.Vt. 2004). "What is necessary is that the court identify a party who is holding property under such circumstances that in equity and good conscience he ought not to retain it." Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir. 1999) (citation omitted).

A number of cases, which this Court finds persuasive, hold that "[a] constructive trust is a remedy; as such it is inchoate until its existence is established by [state] court order." Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.), 178 B.R. 480, 488 (9th Cir. BAP 1995). Accordingly, bankruptcy courts are not authorized "to recognize a constructive trust based on a creditor's claim of entitlement to one; rather, section 541(d) only operates to the extent that state law has impressed property with a constructive trust prior to its entry into bankruptcy." Poss v. Morris (In re Morris), 260 F.3d 654, 666 (6th Cir. 2001). See generally Stoehr v. Miller, 296 F. 414, 426-27 (2d Cir. 1924) (holding that when aliens during war had right to assert constructive trust but did not assert that right, they had no property in the United States subject to control by the Alien Property Custodian: "The constructive trust never came into existence because if the right to elect to assert it existed[,] it was never exercised . . . So that a constructive trust at no time existed for it could not arise until the [German partners] elected to assert it – and this they never did."). Here, the state court never declared that a constructive trust existed because the action was terminated prior to judgment. Although the Defendant makes numerous allegations of wrongdoing by Robert, he has provided no proof, given that the prejudgment attachment does not evidence any wrongdoing: it is a preliminary finding without evidence, based solely on the allegations contained in Entis's state court complaint. As such, the Defendant's constructive trust theory fails.

The Defendant's contention that a "resulting trust" was created when he paid Robert is similarly unavailing (doc. # 10, ¶ 8). A resulting trust is "[a] remedy imposed by equity when property is transferred under circumstances suggesting that the transferor did not intend for the transferee to have the beneficial interest in the property." Black's Law Dictionary (8th ed. 2004). In Vermont, "when a conveyance of land is made to one person, and the purchase money is paid by another, a resulting trust is thereby created. . . for the use and benefit of the person paying the money. The essential elements of this

12

rule are the payment of consideration and the parties' intent at the time of the conveyance." Tokarski v. Gates, 138 Vt. 220, 222, 414 A.2d 1155, 1156 (1980) (internal quotation marks and citations omitted). In spite of Entis's conclusory statements, he has made no showing that the parties originally intended that a trust be created from the sums he paid Robert or that the monies paid by Entis would be held in trust or segregated from the Debtor's assets. The construction contract, attached to the Defendant's motion for summary judgment (doc. # 4, Ex. 1) contains no such provision.

In addition, the Defendant asserts that statutory trusts were created pursuant to 9 V.S.A. § 4003 and 13 V.S.A. § 2029 (doc. # 10, ¶ 8, doc. # 28, p. 2; doc. # 28, p. 3). The former statute, 9 V.S.A. § 4003, provides the schedule for payments to be made by a homeowner to contractors and subcontractors, and interest amounts; it does not create a trust in favor of the homeowner when that homeowner pays a contractor. The latter statute, 13 V.S.A. § 2029, the Home Improvement Fraud Act, concerns the crime that occurs when a person "knowingly" enters into a contract with a homeowner for more than $500 for home improvement, and, inter alia, promises performance that he knows will not be performed, in whole or in part. 13 V.S.A. § 2029(b)(1). The statute defines home improvement as "the fixing, replacing, remodeling, removing, renovation, alteration, conversion, improvement, demolition, or rehabilitation of or addition to any building or land, or any portion thereof, which is used . . . as a residence. Home improvement shall include the construction, replacement, installation, paving, or improvement of driveways, roofs, and sidewalks . . ." 13 V.S.A. § 2029(a). Missing from this definition is any reference to new home construction: a plain reading of the statute leads to the conclusion that the statute applies to improvement of an already existing home, not the construction of a new one. Beyond the inapplicability of this statute to the instant circumstances, the Act makes no reference to the creation of a trust corpus.

The Defendant's trust arguments attempt to recharacterize his contractual arrangement with the Debtor as a trust, but the record is devoid of any proof that a trust existed. Pursuant to the contract, none of the money Entis paid was kept in a separate fund for the benefit of either the Debtor or the subcontractors, and there is no evidence of any such intention.[9] In fact, Entis paid monies in 2004 to Robert to construct his residence; litigation ensued; and almost one and one-half years after the contract had been signed, the Debtor paid Entis $50,000 out of the proceeds he received from the sale of his real property. As the Plaintiff observes, "There was no separate account set aside, no way to trace the defendant's contract deposit to the equity in the property sold and no possible way that the sale proceeds represented a trust corpus set up by the Defendant." (doc. # 26 p. 7). As a result, the Court finds all of the Defendant's trust arguments insufficient to defeat the Plaintiff's complaint.

---

[9] Entis states that on the date he signed the construction contract for Robert/Artworks to construct his house, he handed Robert a $50,000 check, adding that Robert "verbally assured Defendant that Defendant's money would be kept segregated from Debtor's other money" (doc. # 28, p. 2). He makes this statement in a brief, not in an affidavit. He does not assert that this money was actually held in trust, or that the parties intended that it be held in trust.

### D. Ownership of the Transferred Funds

The Defendant argues that the funds used to pay him the $50,000 did not come from the Debtor but rather from the buyer of Robert's house. He reasons that since the funds never came into the Debtor's possession, they never assumed the character of the "property of the debtor" (doc. # 4, ¶¶ 22-24). However, the case law on this point is clear that the proceeds of a sale of a debtor's asset are funds of the debtor, not the buyer, see In re Express Liquors, Inc., 65 B.R. 952, 957-58 (Bankr. D.Md. 1986), a result that does not change if the funds are transferred through an escrow agent at the closing, see In re Reliant Contractors, Inc., 280 B.R. 705, 708-09 (Bankr. N.D.Fla. 2001). This argument fails as well.

### E. Additional Arguments

The Court has considered all of the Defendant's other arguments and finds none of them to be sufficient to defeat the Plaintiff's statutory right to avoid the payment as a preferential transfer.

The Court acknowledges that preference actions generally target "innocent" parties whose only "mistake" was to accept a payment from someone who owed them money and who would, unbeknownst to the payee, file bankruptcy within 90 days; and that requiring the payee to relinquish the hard-earned funds that they may have fought long and hard to recover may appear draconian and unjust. However, it is the mechanism Congress has created to ensure that no creditors are preferred over similarly classified creditors, and equal distribution to creditors is a bedrock principle of the American bankruptcy system. Thus, while the Court may be sympathetic to the Defendant's situation, and understand why, from his individual perspective, it might seem "fairer" to allow the Defendant to keep the $50,000 payment, the statute – and bankruptcy system – requires otherwise.

## CONCLUSION

Based upon the foregoing, the Court finds that the Defendant was an unsecured creditor of the Debtor at the time the Debtor paid him the subject $50,000, that the payment was made on account of an antecedent debt, that the Debtor was insolvent at the time of the payment, that the payment was made within 90 days of when the Debtor filed for bankruptcy relief, that the payment resulted in the Defendant receiving more than he would have received in a chapter 7 liquidation of the property, and that the payment from the closing agent constitutes a payment from the Debtor. Thus, the Court finds the Plaintiff has established that the payment is subject to avoidance as preferential transfer under § 547(b). The Court further finds that the Defendant has failed to demonstrate that any of the exceptions set forth in § 547(c), or the equitable defenses he has articulated, defeat the Plaintiff's right to recover the preferential payment.

Accordingly, the Court grants the Plaintiff's cross-motion for summary judgment and denies the Defendant's motion for summary judgment. The Court shall enter an Order awarding judgment to the Plaintiff and authorizing the recovery of the payment from the Defendant.

This constitutes the Court's findings of fact and conclusions of law.

August 17, 2007  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

15